This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Steven Moore, appeals from the decision of the Wayne County Court of Common Pleas which granted Appellee, Shirley Moore, a civil protection order against him. We affirm.
 I. {¶ 2} On October 3, 2002, Appellee filed for a civil protection order ("CPO") pursuant to R.C. 3113.31 in the Wayne County Court of Common Pleas. The trial court issued a temporary protection order and ordered a full hearing to take place on October 10, 2002. Appellant requested and was granted a continuance until October 22, 2002 so he could seek counsel.
 {¶ 3} The full hearing took place on October 22, 2002. The trial court took the matter under advisement and journalized its entry on October 30, 2002. The trial court granted a CPO to be effective until October 29, 2003. The CPO prohibits Appellant from contacting or coming within 500 yards of Appellee. On November 4, 2002, Appellant moved the trial court for findings of fact and conclusions of law. The trial court obliged and released such findings and conclusions on November 25, 2002. This appeal followed.
 {¶ 4} Appellant raises three assignments of error. For ease of discussion, the assignments of error will be reviewed out of order, and Appellant's first and second assignments of error will be discussed together.
 II. Third Assignment of Error
"The court erred by [failing] to apply the doctrine of res judicata to the claims of the petitioner."
 {¶ 5} In his third assignment of error, Appellant argues that the CPO should have been barred by the doctrine of res judicata stemming from a prior attempt by Appellee to obtain a restraining order against Appellant in West Virginia. We disagree.
 {¶ 6} Appellee did attempt to obtain a restraining order against Appellant in West Virginia. A West Virginia court denied the request. Appellant contends that Appellee obtained the CPO based on information that was not found to be persuasive by the court in West Virginia, specifically an incident where Appellee claims Appellant held a loaded gun to her head in October of 1989. However, the trial court based its decision on events that occurred after the judgment in West Virginia; specifically, Appellant threatening Appellee while she was living at her brother's house in Burbank, Ohio. At the full hearing on October 22, 2002, the transcripts show that Appellee complained of actions that occurred in Ohio after the West Virginia motion had been denied.
MR.WHITNEY (PETITIONER'S ATTORNEY): "Would it be accurate to say that your fear [or] your present fears are based on incidents that have occurred here in Wayne county over the last month and a half?"
PETITIONER: "Yeah definitely."
 {¶ 7} The doctrine of res judicata bars all subsequent action based upon any claim arising out of a transaction or occurrence that was previously decided as a final and valid judgment in a prior action. Harrisv. Lorain, 9th Dist. No. 02CA008099, 2003-Ohio-530, at ¶ 6. (Citations omitted). Because the trial court based its decision upon evidence that was not previously adjudicated, the doctrine of res judicata does not apply.
 {¶ 8} Appellant's third assignment of error is overruled.
 Second Assignment of Error
"The judgment of the trial court is against the manifest weight of the evidence."
 First Assignment of Error
"The trial court erred to the prejudice of the respondent/appellant as its judgment was not supported by sufficient evidence."
 {¶ 9} In his second assignment of error, Appellant agues that the trial court judgment was against the manifest weight of the evidence. Appellant further contends, in his first assignment of error, that the judgment was not supported by sufficient evidence. We disagree.
 {¶ 10} R.C. 3113.31 governs domestic relations, specifically the granting of civil protection orders. It states:
"After * * * [a] full hearing, the court may grant any protection order, * * * to bring about a cessation of domestic violence against the family or household members." R.C. 3113.31(E)(1).
 {¶ 11} R.C. 3113.31 then defines domestic violence as:
"`Domestic violence' means the occurrence of one or more of the following acts against a family or household member:
"* * *
"(b) Placing another person by the threat of force in fear of imminent serious physical harm or committing a violation [of menacing by stalking or aggravated trespass] of the Revised Code." R.C. 3113.31(A)(1).
 {¶ 12} When evaluating whether a judgment is against the manifest weight of the evidence in a civil context, the standard of review is the same as that in the criminal context. Frederick v. Born (Aug. 21, 1996), 9th Dist. No. 95CA006286, at 14. In determining whether a criminal conviction is against the manifest weight of the evidence:
"The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trail ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the [judgment]." Statev. Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 13} The record of the October 22, 2002, full hearing does not show that the trial court clearly lost its way and created such a manifest injustice that the judgment must be reversed. This Court finds no reason to discount the credibility of Appellee's testimony, which establishes her fear of imminent serious physical harm.
 {¶ 14} The testimony at the full hearing revealed the following evidence. Appellee and Appellant were married in 1974. They have one daughter, a minor at the time of the hearing, and one son, over 18. On August 8, 2002, Appellee and her daughter left home without informing Appellant of their destination. Appellee and her daughter lived at a battered woman's shelter for approximately three months before moving into her brother's home in Burbank Ohio. Appellant then began visiting Appellee in Ohio in hopes of reconciling. Appellee maintains that she did not invite or encourage the visits. Appellee testified that on September 5 or September 7, 2002, Appellant sneaked into her brother's house where she had been residing and threatened her. She testified that "he was shaking, he gave me a real scared feeling and he said since you're not coming back, he says I'm just going to shoot you and shoot myself too."
 {¶ 15} Appellee testified that Appellant did not state that he had a weapon, nor did she see one during the course of their conversations. Appellant did not leave the house until Appellee agreed to go to dinner with him at a later date. Appellee testified that she knew her husband to carry a gun when they were married, and that in October of 1989, Appellant pointed a loaded gun at her while he was intoxicated. Appellant has since stopped drinking.
 {¶ 16} Appellee further testified that Appellant returned to the house in Burbank uninvited for what "seems like to me it was almost like every two weekends there for awhile." On one occasion, Appellant knocked on the front door and left after no one answered; 45 minutes later he returned and was "hollering [the daughter's] name and beating on the back door." Appellee called the police, and Appellant left without incident. Appellee also testified that Appellant would frequently call her at her brother's house, but that she rarely answered unless her son left a message. Appellee estimated that Appellant had at least three dozen guns at the time she left him, and he would practice firing them at a shooting range behind their house. Appellee claimed that this contributed to her fear that Appellant was going to harm her.
 {¶ 17} At the time of the hearing, Appellee testified that she had filed for divorce from Appellant, and that she wanted the CPO to continue for her protection and the protection of her family.
 {¶ 18} We find no evidence that the trial court clearly lost its way and created such a manifest injustice as to require a reversal. The decision to grant the CPO was not against the manifest weight of the evidence.
 {¶ 19} Finally, Appellant's contention that the decision was based on insufficient evidence lacks merit. "Because sufficiency is required to take a case to the [trier of fact], a finding that a [judgment] is supported by the weight of the evidence must necessarily include a finding of sufficiency." (Emphasis omitted). State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at 4.
 {¶ 20} Appellant's first and second assignments of error are overruled.
 III. {¶ 21} Appellant's assignments of error are overruled, and the judgment of the Wayne County Court of Common Pleas is affirmed.
Judgment affirmed.
Carr, J. and Batchelder, J. concur.